THOMAS, P.J.,
for the Court:
¶ 1. Sammy Corner appeals his conviction of armed robbery and aggravated assault, raising the following issue as error:
*794 I. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION, OVER DEFENSE OBJECTION, TO REPEATEDLY EXAMINE THE JURY VENIRE WITH HYPOTHETICAL QUESTIONS REQUIRING PROSPECTIVE JURORS TO PLEDGE A PARTICULAR VERDICT AND AS A RESULT, CORNER WAS DENIED A FUNDAMENTALLY FAIR TRIAL BY A FAIR AND IMPARTIAL JURY IN VIOLATION OF THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On October 25, 1996, Eddie Daniels was closing down his restaurant, Kitchen Fresh Sandwiches, located in Jackson, Mississippi. Sammy Corner stopped by from his residence located across the street from the restaurant. Daniels let Corner in because Corner was supposed to be returning some tools he had borrowed. Daniels and Corner talked for a while, and Corner told Daniels that he did not have the tools but would pay for them. Daniels followed Corner across the street on the pretext that Corner had money at his house. Just before entering the house, Corner pulled a gun and ordered Daniels in the house. Corner then demanded Daniels’s wallet and keys to Daniels’s van and restaurant. Corner then had Daniels lie face-down on the floor and proceeded to shoot him in the back. After being shot, Daniels immediately leaped to his feet and fled the house. Daniels eventually contacted the police and received medical attention.
¶ 4. Corner was indicted for both armed robbery and aggravated assault. A trial was commenced on August 6, 1997 and concluded on August 7, 1997. After deliberations, the jury found Corner guilty on both counts.
ANALYSIS
I.
THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION, OVER DEFENSE OBJECTION, TO REPEATEDLY EXAMINE THE JURY VENIRE WITH HYPOTHETICAL QUESTIONS REQUIRING PROSPECTIVE JURORS TO PLEDGE A PARTICULAR VERDICT AND AS A RESULT, CORNER WAS DENIED A FUNDAMENTALLY FAIR TRIAL BY A FAIR AND IMPARTIAL JURY IN VIOLATION OF THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.
¶ 5. Corner complains of the allegedly unfair practice of the district attorney during voir dire examination of the jury of presenting hypothetical questions to the venire requiring them to pledge a particular verdict in the event that the evidence presented a certain set of facts. Corner argues that this type of examination is expressly prohibited by the relevant court rules as well as being in violation of Corner’s fundamental right to a fair trial by a fair and impartial jury. Corner asserts that the trial judge erred in overruling the many defense objections to this line of questioning. Therefore, Corner contends that the sentences imposed should 'be reversed and vacated, and that he be granted a new trial on the merits.
¶ 6. URCCC 3.05 provides that:
In the voir dire examination of jurors, the attorney will question the entire ve-nire only on matters not inquired into by the court. Individual jurors may be examined only when proper to inquire as to answers given or for other good cause allowed by the court. No hypothetical questions requiring any juror to pledge a particular verdict will be asked. Attorneys will not offer an opinion on the *795 law. The court may set a reasonable time limit for voir dire.
(emphasis added)
¶ 7. Our supreme court has stated that “[o]ur caselaw bars attorneys from trying to get the jury to promise that under a hypothetical set of circumstances, they will vote a certain way.” Holland v. State, 705 So.2d 307, 338-39 (¶ 115) (Miss.1997) (citing West v. State, 553 So.2d 8, 21-22 (Miss.1989)). We will reverse the trial judge’s ruling on the appropriateness of voir dire questioning under an abuse of discretion standard. Id. We hold that the trial judge did not abuse his discretion as the objected to questions were within permissible range and were not questions seeking a pledge of a particular verdict.
¶ 8. The following exchange took place during voir dire by the State:
But we all have preconceptions of the way things ought to happen. I am going to ask you a couple of questions now to find out if any of you have any kind preconceptions about things that although the law may not require that you in your mind would require before you could consider voting guilty in a criminal case where the State is asking for you to find the defendant and on the armed robbery case to fix a sentence at life. Okay?
Let’s take a weapon, for example. Are there any of you that in an armed robbery case where it is alleged that the robbery occurred by exhibiting a deadly weapon, gun, knife, crow bar, whatever, are there any of you that absolutely could not even consider finding a defendant guilty in an armed robbery case unless and until the State actually shoiued you the weapon that was used?
MR. FORTNER: Objection, Your Honor. That is an improper question.
MR. DELAUGHTER: I am asking if they could even consider it, not that they return a verdict.
THE COURT: Overruled.
MR. DELAUGHTER: (CONTINUING.) Are there any of you that would that automatically not even consider, regardless of what the other evidence is, that you would not even consider finding a defendant guilty of armed robbery unless you saw the weapon? Do any of you feel that way? Any of you? Okay.
Another thing we see and hear about on TV are fingerprints. Are there any of you that regardless of ivhat the other evidence is that unless and until the State brought to you some evidence concerning fingerprints that you would not even consider finding a defendant guilty of a criminal charge?
MR. FORTNER: Objection, Your Honor. That is an improper question and invades the province of the jury.
MR. DELAUGHTER: It’s not improper, Your Honor. I am asking whether they could consider it. If they can’t, I need to know that now.
THE COURT: Overruled.
MR. DELAUGHTER: (CONTINUING.) Any of you feel that way? That unless you saw fingerprints you would never even consider voting guilty in a criminal case? Okay.
Another thing you have heard about on TV, particularly during the O.J. Simpson trial was DNA. Any of you have the opinion that unless the State brings to you some form of DNA evidence that you would never even consider voting guilty in a criminal case regardless of what the other evidence is?
MR. FORTNER: Objection, Your Honor. That invades the province of the jury and it is an improper question on voir dire.
THE COURT: Overruled.
MR. DELAUGHTER: (CONTINUING.) Do any of you feel that way? Okay.

What about a confession, that unless the State put on some police officer that said the defendant confessed to it that you would never ever even consider voting guilty in a criminal case?

MR. FORTNER: Objection, Your Honor. That is an improper question *796 on voir dire and invades the province of the jury.
THE COURT: Overruled.
MR. DELAUGHTER: (CONTINUING.) Do any of you feel that way?
(emphasis added)
¶ 9. The questions asked by the State did not specifically seek pledges from the venire to return a verdict of guilty upon the fulfilment of any condition. The questions merely ask whether the ve-nire would still be able to consider a guilty verdict even though there was no weapon, fingerprint, DNA, or confession evidence presented. Our supreme court has held that where no specific request is made to secure a promise of a guilty verdict reversible error does not occur. Lester v. State, 692 So.2d 755, 773-74 (Miss.1997). Also, trial courts have “broad discretion in passing on the extent and propriety of questions that are addressed to the venire.” Davis v. State, 684 So.2d 643, 651 (Miss. 1996). We hold that the trial judge did not abuse his discretion as the State’s voir dire was within the permissible range of acceptable questioning. This assignment is without merit.
¶10. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I FOR ARMED ROBBERY AND SENTENCE OF THIRTY YEARS; COUNT II FOR AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS TO RUN CONCURRENTLY WITH SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.